```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

**United States of America**

    v.                                    Case No. 19-cv-1113-PB
                                              Opinion No. 2020 DNH 154
**Sheikh Enamur Rahman**
**a/k/a Mohammed Enam**


                    **MEMORANDUM AND ORDER**


   More than twelve years after Sheikh Enamur Rahman became a naturalized U.S. citizen, the government filed this civil action to strip him of his citizenship.  The complaint alleges that Rahman illegally procured naturalization in violation of 8 U.S.C. § 1451(a).  Rahman moves for judgment on the pleadings on the ground that the action is subject to a five-year statute of limitations under 28 U.S.C. § 2462.  The government opposes Rahman's motion.  Because the five-year statute of limitations does not apply to denaturalization actions, I deny Rahman's motion.


                    **I.   BACKGROUND**


   Rahman is a former citizen of Bangladesh who became a permanent resident in 2004 based on his marriage to a U.S. citizen.  He applied for naturalization in 2006 and became a naturalized U.S. citizen in 2007.

In 2019, the government commenced this action to revoke Rahman's citizenship. The complaint alleges that Rahman applied for asylum in 1994 using the identity Mohammed Enam, withdrew that application in 1997, and was ordered deported in 2000. When he subsequently applied for lawful permanent residence, Rahman allegedly lied about and concealed his prior use of the other identity and his immigration history. As a result, the government contends that he was not eligible for the permanent residence on which his naturalization is premised and that his naturalization was, therefore, unlawfully procured.[1]

## II. STANDARD OF REVIEW

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed but early enough not to delay trial." Fed. R. Civ. P. 12(c); see R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). A motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). Accordingly, in reviewing a motion for judgment on the pleadings, I "must accept all of the nonmovant's well-

---

[1] The complaint presents additional claims as to why Rahman's naturalization must be revoked, but the specifics of those claims are not relevant to the present motion.

2

pleaded factual averments as true, and draw all reasonable inferences in his favor." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal citations omitted).  I may enter judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment."  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (internal quotation marks omitted).

The parties agree that the applicability of the statute of limitations is a question of law that I may resolve on the pleadings.

### III. **ANALYSIS**

Rahman argues that a denaturalization action constitutes a "penalty" for purposes of the five-year "catch-all" statute of limitations generally applicable to civil fines, penalties, and forfeitures.  See 28 U.S.C. § 2462.  Because more than five years have passed since he was naturalized, Rahman contends that the government cannot now revoke his citizenship.  In its opposition to Rahman's motion, the government argues that § 2462 does not apply to denaturalization proceedings and that there is no time limit on such actions.[2]

---

[2] The government also has filed a cross-motion for judgment on the pleadings, arguing that I must revoke Rahman's citizenship

Under 8 U.S.C. § 1451(a), the government may file a civil complaint to revoke citizenship if a citizen's naturalization was "illegally procured" or was "procured by concealment of a material fact or by willful misrepresentation."  Naturalization was "illegally procured" if the individual did not meet the statutory requirements for citizenship. Fedorenko v. United States, 449 U.S. 490, 506 (1981).  "Nothing in the statute provides for the imposition of a fine, penalty, or sentence of imprisonment—only the revocation of citizenship." United States v. Phattey, 943 F.3d 1277, 1281 (9th Cir. 2019) (citing 8 U.S.C. § 1451(a)).

The Immigration and Nationality Act "does not contain an express period of limitations for initiating denaturalization proceedings." United States v. Rebelo, 394 F. App'x 850, 852 (3d Cir. 2010); see Costello v. United States, 365 U.S. 265, 283 (1961) ("Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud.").[3]  The question, then, is whether the catch-all statute of limitations, generally applicable to actions "for the enforcement of any

---

because the undisputed facts established in the pleadings show that he procured it illegally.  I address the government's motion in a separate order.

[3] By contrast, Congress has imposed a ten-year statute of limitations to a criminal proceeding for unlawful procurement of naturalization under 18 U.S.C. § 1425.  See 18 U.S.C. § 3291.

4

civil fine, penalty, or forfeiture, pecuniary or otherwise," see 28 U.S.C. § 2462, applies to denaturalization actions. Specifically, Rahman argues that denaturalization is a "penalty" for the purposes of § 2462.  In resolving this question, I am guided by the principle that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government."  Badaracco v. C.I.R., 464 U.S. 386, 391 (1984) (quoting E.I. Dupont De Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)); see United States v. Li, 619 F. App'x 298, 301-02 (5th Cir. 2015) (applying this principle in analyzing applicability of § 2462 to denaturalization actions); Rebelo, 394 F. App'x at 853 (same).

As Rahman acknowledges, the Supreme Court has long declared that denaturalization is not a penalty but rather a means to deprive a naturalized citizen of a privilege that should never have been conferred.  See Trop v. Dulles, 356 U.S. 86, 98 (1958) (plurality opinion) ("Denaturalization is not imposed to penalize the alien for having falsified his application for citizenship . . . ."); Johannessen v. United States, 225 U.S. 227, 242 (1912) (explaining that denaturalization "imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct" but rather "simply deprives him of his ill-gotten privileges"). Applying this principle, federal circuit and district courts

5

have uniformly held that the catch-all statute of limitations does not apply to denaturalization actions. See, e.g., Phattey, 943 F.3d at 1283; Li, 619 F. App'x at 302; Rebelo, 394 F. App'x at 853; United States v. Wasel, No. 2:17-cv-12296, 2020 WL 4584168, at *2 (E.D. Mich. Aug. 10, 2020); United States v. Becker, No. CV 18-2049, 2019 WL 6167396, at *5 (C.D. Cal. June 20, 2019); United States v. Borgono, No. 18-cv-21835, 2019 WL 1755709, at *4 (S.D. Fla. Apr. 18, 2019); United States v. Malik, No. 15-9092-CM, 2019 U.S. Dist. LEXIS 66354, at *3-4 (D. Kan. Apr. 17, 2019); United States v. Dhanoa, 402 F. Supp. 3d 296, 301 (D.S.C. 2019); see also United States v. Hauck, 155 F.2d 141, 143 (2d Cir. 1946) (concluding that reliance on predecessor statute to § 2462 in denaturalization action amounted to "a hopeless clutching at straws; that statute is completely irrelevant") (citing United States v. Brass, 37 F. Supp. 698, 700 (E.D.N.Y. 1941); United States v. Ali, 7 F.2d 728, 730 (E.D. Mich. 1925)).

Not to be deterred, Rahman argues that the case law needs to be reassessed in light of the Supreme Court's decision in Kokesh v. SEC, 137 S. Ct. 1635, 1642 (2017). In Kokesh, the Supreme Court held that § 2462 applies to disgorgement actions filed by the Securities and Exchange Commission ("SEC") to enforce federal securities laws. Id. at 1645. Disgorgement qualifies as a penalty, the Court reasoned, because (1) the

6

wrong it seeks to redress is a wrong to the public, rather than to an individual, and (2) its primary purposes are punishment and deterrence, rather than compensating victims for their losses. Id. at 1642. The Court rejected the government's argument that SEC disgorgement is remedial because it does not necessarily "simply restore the status quo." Id. at 1644-45. Instead, disgorgement may "leave[] the defendant worse off" because the sanction can exceed the profits the defendant gained as a result of the violation. Id.

Rahman's reliance on Kokesh to support his position that denaturalization operates as a penalty is misplaced. First, the Supreme Court in Kokesh addressed a pecuniary sanction, not a revocation of status. An expansive reading of that opinion to overrule longstanding precedent specific to denaturalization is inconsistent with the Court's narrow holding. See id. at 1642 n.3 ("The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period."); see also Wasel, 2020 WL 4584168, at *1 ("The Supreme Court's discussion of monetary penalties in the context of SEC enforcement actions in . . . Kokesh cannot overrule longstanding precedent solely by implication."); Becker, 2019 WL 6167396, at *5 (declining to "break from . . . decades of contrary cases . . . based only on an expansive reading of the Court's arguably narrow decision in

7

Kokesh"); Dhanoa, 402 F. Supp. 3d at 301 (reasoning that Kokesh did not compel a conclusion that denaturalization claims are subject to § 2462 because "the Court was specifically only addressing a pecuniary penalty").

More fundamentally, under the principles announced in Kokesh, denaturalization is not a penalty within the meaning of § 2462. As the government concedes, denaturalization redresses a public wrong and therefore meets the first prong of the Kokesh test. See 137 S. Ct. at 1642. But denaturalization does not satisfy the second prong because, unlike disgorgement, its purpose is remedial, not punitive. See id.

The statute pursuant to which the government seeks to denaturalize Rahman - § 1451(a) – provides that denaturalization proceedings may be instituted "for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization." 8 U.S.C. § 1451(a). Unlike its counterpart that sanctions criminal proceedings for unlawful procurement of naturalization, § 1451(a) does not authorize imposition of a fine or imprisonment. Compare id. with 18 U.S.C. § 1425. Revoking citizenship pursuant to this civil statute solely withdraws a privilege that should not have been bestowed in the first place, restoring the defendant to the same position he would occupy but for his illegal conduct. See Johannessen, 225 U.S. at 242.

8

Denaturalization corrects the mistake of granting citizenship to someone who was not entitled to it in the first place in order to "safeguard the integrity of this priceless treasure." Fedorenko, 449 U.S. at 507 (internal quotation marks omitted). Accordingly, the language and structure of § 1451(a) confirm that "denaturalization is a restorative or remedial action, not an action that seeks to punish." Li, 619 F. App'x at 302.

The fact that denaturalization is purely restorative distinguishes it from SEC disgorgement, which may exceed the defendant's illicit gains and leave him in a worse position than if he had never violated securities laws. See Kokesh, 137 S. Ct. at 1644-45. Indeed, every court to apply the Kokesh test in the context of denaturalization has held that, unlike disgorgement, the purpose of denaturalization is not to punish or deter but to restore the status quo ante. See Phattey, 943 F.3d at 1282-83; Wasel, 2020 WL 4584168, at *1; Becker, 2019 WL 6167396, at *5; Malik, 2019 U.S. Dist. LEXIS 66354, at *3-4; Dhanoa, 402 F. Supp. 3d at 301.

To be sure, denaturalization actions may have a deterrent effect. Citizenship is a "precious right," Costello, 365 U.S. at 269, and its loss carries "severe and unsettling consequences." Fedorenko, 449 U.S. at 505. But, as the Ninth Circuit recently concluded, any deterrence is "simply an incidental effect" of denaturalization, rather than its "primary

9

purpose." Phattey, 943 F.3d at 1283 (quoting Kokesh, 137 S. Ct. at 1643).

Rahman nonetheless contends that denaturalization functions as a penalty because in recent press releases the Department of Justice ("DOJ") described denaturalization actions as promoting deterrence and punishment. This argument is meritless. Statements by the executive branch tasked with the enforcement of a statute cannot override the statute's legislative purpose. As discussed above, the objectively manifested legislative purpose of § 1451(a) is restorative, not punitive. It is no surprise, then, that other courts have rejected the same argument. See Becker, 2019 WL 6167396, at *5; Malik, 2019 U.S. Dist. LEXIS 66354, at *3-4; United States v. Phattey, No. 3:17-cv-00247, ECF No. 32 (D. Alaska Oct. 2, 2018). Because DOJ's press releases cannot supersede a contrary legislative purpose, I am not persuaded to depart from uniform case law precluding the imposition of § 2462's limitations period to denaturalization actions.[4]

---

[4] Rahman also points to two cases where the revocation of a defendant's status was deemed to be a penalty within the meaning of § 2462. See Sheinbein v. Dudas, 465 F.3d 493 (Fed. Cir. 2006); Proffitt v. FDIC, 200 F.3d 855 (D.C. Cir. 2000). Those cases are inapposite. In each case, the defendant lawfully obtained a status, proceeded to commit some act of wrongdoing, and then had the status revoked as punishment. See Sheinbein, 465 F.3d at 494, 496 (addressing order excluding attorney from practicing before USPTO because of disbarment in other jurisdictions for committing criminal act while member of those

## IV.    CONCLUSION

Because denaturalization is not a penalty within the meaning of 28 U.S.C. § 2462, the catch-all statute of limitations does not apply to this action.  Accordingly, I deny Rahman's motion for judgment on the pleadings (Doc. No. 20).

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 2, 2020

cc:  Troy Liggett, Esq.
     Michele E. Kenney, Esq.

---

bars); Proffitt, 200 F.3d at 861 (addressing FDIC's removal of bank director due to misconduct committed while in office).  By contrast, the government alleges that Rahman committed an unlawful act to obtain the status in question.  Revocation, therefore, would restore his ex-ante status, correcting the erroneous grant of citizenship, rather than punishing him for any wrongdoing.

11